**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE EUROPEAN AERONAUTIC DEFENCE & SPACE CO. SECURITIES LITIGATION | No. 08 Civ. 5389 (WHP)<br><br>ECF CASE |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM**
**IN SUPPORT OF THEIR MOTIONS TO DISMISS**

Warren R. Stern (WS 2957)
George T. Conway III (GC 3181)
Michael S. Winograd  (MW 7026)
Jonathan E. Goldin (JG 0578)
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
(212) 403-1000

*Attorneys for Defendants*

**TABLE OF CONTENTS**

1. The conduct test ...................................................................................................................1
2. The effects test .....................................................................................................................4
3. *Forum non conveniens* ........................................................................................................5

Conclusion ..................................................................................................................................7

## TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Cornwell* v. *Credit Suisse Group*, No. 08
  Civ. 3758 (VM), 2009 WL 3241404
  (S.D.N.Y. Oct. 5, 2009) ................................................................................. 2, 3, 4, 5

*Flex-N-Gate Corp.* v. *Wegen*, No. 08
  Civ. 2502 (LLS), 2008 WL 5448994
  (S.D.N.Y. Dec. 29, 2008) ......................................................................................... 5

*Guidi* v. *Inter-Continental Hotels Corp.*,
  224 F.3d 142 (2d Cir. 2000) ...................................................................................... 5

*In re Bayer AG Sec. Litig.*,
  423 F. Supp. 2d 105 (S.D.N.Y. 2005) ................................................................... 2, 3

*In re CP Ships Ltd. Sec. Litig.*,
  578 F.3d 1306 (11th Cir. 2009) ............................................................................. 3, 4

*In re NovaGold Resources Inc. Sec. Litig.*,
  629 F. Supp. 2d 272 (S.D.N.Y. 2009) .................................................................... 1, 2

*In re SCOR Holding (Switzerland) AG Litig.*,
  537 F. Supp. 2d 556 (S.D.N.Y. 2008) ....................................................................... 5

*In re Yukos Oil Co. Sec. Litig.*, No. 04
  Civ. 5243 (WHP), 2006 WL 3026024
  (S.D.N.Y. Oct. 25, 2006) ............................................................................... 2, 3, 4, 5

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*,
  510 F.Supp. 2d 246 (S.D.N.Y. 2007) ........................................................................ 5

*Morrison v. Nat'l Austl. Bank Ltd.*,
  547 F.3d 167 (2d Cir. 2008), *petition for
  cert. filed*, 77 U.S.L.W. 3562 (U.S. Mar.
  23, 2009) (No. 08-1191) ................................................................................ 1, 2, 3, 4

*Online Payment Solutions, Inc.* v. *Svenska
  Handelsbanken AB*, 638 F. Supp.2d 375
  (S.D.N.Y 2009) ......................................................................................................... 5

**Other Authorities**

*Kapitalanleger-Musterverfahrensgesetz*
  (the German Capital Markets Model
  Case Act), *translation available at*
  <http://bit.ly/3GXCdE> ............................................................................................ 6

In response to the Court's invitation, defendants respectfully submit this supplemental brief in further support of their motions to dismiss. Since the filing of defendant's reply brief, newly decided authorities provide additional support for dismissal under the conduct and effects tests and under the *forum non conveniens* doctrine. In addition, the court in Germany has taken a significant step toward the commencement of a model proceeding there.

1. *The conduct test*. Two more post-*National Australia Bank* decisions in this District, *NovaGold Resources* and *Credit Suisse Group*, along with a recent decision of the Eleventh Circuit that applies *National Australia Bank*, confirm that plaintiff has failed to satisfy the conduct test.

a. In *In re NovaGold Resources Inc. Securities Litigation*, 629 F. Supp. 2d 272, 304-06 (S.D.N.Y. 2009), Judge Cote applied the conduct test to claims of foreign plaintiffs who had purchased shares of a Canadian mining company on the Toronto Stock Exchange. As in this case, "[t]he financial information at issue was derived from [foreign] activities and analyzed there [by the foreign company] and formed the basis for reports issued from [the foreign country]." *Id.* at 305. Nevertheless, like the plaintiff here, the plaintiffs in *NovaGold* argued that the conduct test had been satisfied by an investor presentation, conference calls with United States participants, and other statements to investors in the United States. *Id.* Indeed, the *NovaGold* plaintiffs' proffered jurisdictional predicate was arguably much *stronger* than what plaintiff proffers here: "up to 75% of NovaGold's trading volume occurred on the American Stock Exchange," and NovaGold had engaged in the "dissemination of SEC filings, and press releases in the United States," *id.*—*neither* of which is true here.

The Court held that the conduct test had not been met. Although the investor presentation, SEC filings, and other public statements had been disseminated in the United States, they had "'emanated' from Canada" for purposes of the conduct test under *National Australia Bank*, because "'[e]nsuring the accuracy of such statements is much more central to the responsibilities of [NovaGold's] corporate headquarters'" in Canada. *Id.* at 305-06 (quoting *Morrison* v. *Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 173, 176 (2d Cir. 2008) ("*NAB*"), *petition for*

*cert. filed*, 77 U.S.L.W. 3562 (U.S. Mar. 23, 2009) (No. 08-1191)).  In addition, it was "not alleged that the disclosures were concocted in the United States." *Id.* at 306.  As a result, the Court held that the United States statements had not been alleged to have "'directly caused'" the losses suffered on the Toronto Stock Exchange.  *Id.* at 306 (citation omitted).  These points are true here as well:  plaintiff does not dispute that EADS's European headquarters bore responsibility for the company's public statements all around the world, does not allege that EADS concocted fraudulent disclosures in the United States, and has not pleaded that any domestic statements directly caused its losses on foreign exchanges.

*NovaGold* is entirely consistent with this Court's decisions in *Yukos* and *Bayer*—decisions that correctly anticipated *NAB*—as well as other authorities cited in defendants' opening and reply briefs.  *See In re Yukos Oil Co. Securities Litigation*, No. 04 Civ. 5243 (WHP), 2006 WL 3026024, at *10 (S.D.N.Y. Oct. 25, 2006) (holding that, "[a]lthough the Complaint alleges that Yukos filed its 2002 Annual Report with the SEC in the United States, that document is not alleged to have been prepared in the United States," and that, as a result, "[a]ll of Defendants alleged misstatements emanated from abroad," and that, given the "raft of allegedly misleading statements" made abroad, the SEC filing was "not a 'substantial act[] in furtherance of the fraud' sufficient to confer federal subject matter jurisdiction"; citations omitted); *In re Bayer AG Securities Litigation*, 423 F. Supp. 2d 105, 111-12 (S.D.N.Y. 2005) (concluding that all of "[t]he Bayer AG misstatements and omissions permeating the Complaint originated from Bayer AG in Germany," *including* SEC filings and other statements disseminated in the United States, that "the 'authorship, preparation and dissemination of the allegedly false information' was done by Bayer AG abroad," and that "[a]ccordingly" the "SEC filings … 'emanated from a foreign source'" and "amid all the other foreign representations alleged throughout the Complaint" did not satisfy the conduct test); *see also* Defs.' Reply Mem. in Supp. of Mot. To Dismiss for Lack of Subject Matter Jurisdiction and *Forum Non Conveniens* ("Def. SMJ/FNC Reply") 2-3 & nn.1-3 (filed Apr. 23, 2009).

b.  Also consistent with *Yukos*, *Bayer*, and the previously-cited cases is Judge Marrero's decision last month in *Cornwell* v. *Credit Suisse Group*, No. 08 Civ. 3758 (VM), 2009 WL 3241404 (S.D.N.Y. Oct. 5, 2009).  Addressing the claims of foreign plaintiffs who had purchased Credit Suisse shares on the Swiss Exchange, the Court concluded that the conduct test had not been met under *NAB* because the "'conduct [that] comprises the heart of the alleged fraud'" consisted of "the alleged misrepresentations and omissions regarding [Credit Suisse Group's] financial performance and … business practices," and "most of these statements originated abroad."  *Id.* at *7, *9 (quoting *NAB*, 547 F.3d at 175).

The Court specifically held that the extensive allegations about Credit Suisse's SEC filings, and its investor conference calls involving U.S. participants, did not satisfy the conduct test.  The SEC filings in the United States did not refute the conclusion that "the heart of the fraud alleged here consists of the disclosures and statements issued from Switzerland."  *Id.* at *10.  And the conference calls could not satisfy the direct-causation standard of the conduct test "[g]iven the central role in the alleged frauds played by the financial results and statements that were issued from [Credit Suisse] headquarters in Switzerland":

> Nor can these conference calls be said to have "directly caused losses to investors abroad" as required under the conduct test.  *Morrison* [v. *NAB*], 547 F.3d at 171.  The "determination of whether American activities 'directly' caused losses to foreigners depends on what and how much was done in the United States and on what and how much was done abroad."  *Id.*  Given the central role in the alleged frauds played by the financial results and statements that were issued from CSG's headquarters in Switzerland, the Court cannot find that the conference calls "directly caused" the Lead Plaintiffs' losses, even if the Court could find a preponderance of the evidence that the calls constitute conduct that occurred in the United States.

*Id.* at *11.  Like *NovaGold*, *Yukos*, and *Bayer*, *Credit Suisse* is directly on point.  As in those cases, the plaintiff cannot overcome the fact that the "'heart of the alleged fraud'" consists of the statements created in, and disseminated from, Europe.  *Credit Suisse*, 2009 WL 3241404, at *7, *9 (quoting *NAB*, 547 F.3d at 175); *see also* Defs.' SMJ/FNC Reply 2-3 & nn.1-3.

c.  Lastly, the Eleventh Circuit's very recent decision in *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306 (11th Cir. 2009), likewise confirms that plaintiff does not even come

3

close to meeting the conduct test here. Applying but distinguishing *NAB*, the Court of Appeals there held that the conduct test had been met, even though the company was nominally foreign. The reason: "The allegedly fraudulent scheme was masterminded by [the CEO] and other executives operating out of Tampa, [Florida,] and implemented in substantial part by those executives in Tampa." *Id.* at 1314. It was on this ground that the Eleventh Circuit distinguished *Morrison* v. *NAB*:

> Thus, we conclude that the instant case is very different from *Morrison*. Although the problematic numbers in *Morrison* may have originated in the United States, all of the executives bearing responsibility to present accurate information to the investing public, and all of their actions in supervising and verifying such information, occurred in Australia. By contrast, in the instant case, not only did the manipulation and falsification of the numbers occur in Florida, the executives with responsibility for ensuring the accuracy of the accounting data operated from Florida.

*Id.* at 1316; *see NAB*, 547 F.3d at 176-77.

    Nothing even close to these facts, of course, is alleged here; indeed, plaintiff does not even allege that any false information "may have originated in the United States," as was held *in*sufficient in *NAB*. *CP Ships*, 578 F.3d at 1316. No doubt that is why the complaint does not invoke the conduct test, why that test was invoked only for the first time in plaintiff's answering brief—and no doubt why, despite the powerful economic incentives to plead the largest class possible, the complaint does not propose a worldwide "foreign-cubed" class as opposed to a much smaller class consisting merely of Americans who purchased on foreign exchanges.

    2. *The effects test*. *Credit Suisse* also provides pertinent guidance on the effects test. It confirms that—as this Court previously recognized in *Yukos*, 2006 WL 3026024, at *11—the claims of United States residents do not automatically satisfy the effects test. The Court in *Credit Suisse* considered the claims of lead plaintiffs who had purchased Credit Suisse Group's American Depositary Receipts on the New York Stock Exchange. *Credit Suisse*, 2009 WL 3241404, at *12-*13. It held that "[e]ven if [the ADR purchaser plaintiffs] were United States residents during the Class Period, … the Court cannot conclude that [the ADR] Lead Plaintiffs have demonstrated the required effects on United States investors." *Id.* at *13. In reaching this

conclusion, the Court noted "that only 4.1% of CSG's shares are traded on the NYSE through ADRs," and contrasted a prior decision of this Court that found the effects test to have been met when there were far greater percentages of ADR trading and American investors. *Id.* (discussing *In re SCOR Holding (Switzerland) AG Litig.*, 537 F. Supp. 2d 556, 561 (S.D.N.Y. 2008), where up to 29% of SCOR shares were held by Americans, and up to 11% traded as ADRs); *see also Yukos*, 2006 WL 3026024, at *2, *11 (holding that, despite the "residence in this country" of the controlling shareholder of plaintiff Parsimony, the effects test had not been met by Parsimony's purchase of Yukos bonds that bore a legend stating that they "'could not be offered, sold or delivered within the United States or to U.S. Persons'").

The case at bar, of course, follows *a fortiori* from *Credit Suisse*. First and foremost, whereas the *Credit Suisse* domestic plaintiffs had purchased ADRs *in the United States*, in this case the plaintiff's purchases did *not* take place in the United States, but rather took place *abroad*. Moreover, EADS did *not* list shares or ADRs on any public exchange in the United States, and did not sponsor any ADRs for trading on the over-the-counter market; and the complaint makes no allegation that any trading in *un*sponsored ADRs, which EADS had *nothing* to do with, was significant. *See* Defs.' Mem. in Supp. of Mot. To Dismiss for Lack of Subject Matter Jurisdiction and *Forum Non Conveniens* ("Def. SMJ/FNC Br.") 6 (filed Jan. 2, 2009).

3. *Forum non conveniens.* a. As for the *forum non conveniens* doctrine, there is now additional authority on the level of deference due plaintiff's choice of forum here. Extending the long line of authority cited in defendants' opening brief, *see* Def. SMJ/FNC Br. 18-20, the Court in *Online Payment Solutions, Inc.* v. *Svenska Handelsbanken AB*, 638 F. Supp. 2d 375, 382 (S.D.N.Y 2009), recognized that "'in the Second Circuit, [the] deference [due an American plaintiff's choice of forum] *is* diminished when 'plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts.'" (Emphasis in original; quoting *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 257 (S.D.N.Y. 2007) (quoting *Guidi* v. *Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000))). In almost identical language, the Court in *Flex-N-Gate Corp.* v. *Wegen*, No. 08 Civ. 2502 (LLS), 2008 WL 5448994, at *3

5

(S.D.N.Y. Dec. 29, 2008), stated that "[i]n the Second Circuit, the deference due an American plaintiff 'is diminished where "plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts."'" (Citations omitted.) This principle obviously applies here; any sophisticated investment fund that, like the plaintiff in this case, chooses to go out of its way to purchase securities on a foreign market should expect to find its remedy there as well.

      b. Finally, there is one more thing to say, on the question of whether Germany provides an adequate alternative forum. As noted in defendants' opening and reply briefs, under Second Circuit precedent there is no merit to plaintiff's suggestion that the absence of a class-action mechanism under German law renders a German forum inadequate; to show the adequacy of the German forum, it suffices that the defendants are amenable to process there, which plaintiff does not dispute. Defs.' SMJ/FNC Br. 22 n.40; Defs.' SMJ/FNC Reply 7-8 & nn.12-13. Nevertheless, defendants pointed out that even if the law were otherwise, Germany would remain an adequate forum because it provides for an alternative mass-litigation mechanism—the German capital markets model case system—and that a motion to open a model case against EADS had already been filed in the *Landgericht Frankfurt am Main* (the Regional Court of Frankfurt). Defs.' SMJ/FNC Reply 5-6, 8. Since the filing of reply brief and plaintiff's proposed sur-reply brief, the German litigation has taken significant steps forward: in accordance with Section 2 of the *Kapitalanleger-Musterverfahrensgesetz* (the German Capital Markets Model Case Act), the Frankfurt court ruled that an acceptable model proceeding motion has been filed, and, in accordance with the court's order and the statutory mandate, that motion has now been published in the *elektronischer Budesanzeiger*, the electronic version of the German Federal Gazette.[1]

---

[1] The published motion may be found on the website of the *elektronischer Bundesanzeiger*, <https://www.ebundesanzeiger.de/>, by entering "EADS Landgericht Frankfurt" in the search box (beneath "*Suchen*" and "*Suchbegriff*") on the homepage. An English translation of the statute is reprinted in Appendix A to Lead Pltf.'s Sur-Reply in Further Opp. To Defs.' Mot. To Dismiss on Ground of *Forum Non Conveniens* (filed Apr. 30, 2009). *See also* <http://bit.ly/3GXCdE> (shortened hyperlink to translation of statute on German Federal Ministry of Justice website).

## CONCLUSION

It is respectfully submitted that the Second Amended Complaint should be dismissed.

Dated: New York, New York
November 16, 2009

                                                  WACHTELL, LIPTON, ROSEN & KATZ

                                                  By:  /s/ GEORGE T. CONWAY III
                                                        George T. Conway III (GC 3181)

                                                   Warren R. Stern (WS 2957)
                                                  George T. Conway III (GC 3181)
                                                  Michael S. Winograd  (MW 7026)
                                                  Jonathan E. Goldin (JG 0578)
51 West 52nd Street
New York, New York 10019
(212) 403-1000

*Attorneys for Defendants*

7

## CERTIFICATE OF SERVICE

I hereby certify that, on this 16th day of November, 2009, I caused true and correct copies of Defendants' Supplemental Memorandum in Support of Their Motions To Dismiss to be filed and served electronically using the Court's CM/ECF system and to be served via e-mail upon:

>Christopher J. Keller, Esq.
>LABATON SUCHAROW LLP
>140 Broadway
>New York, New York  10005
>ckeller@labaton.com
>
>Samuel H. Rudman, Esq.
>COUGHLIN STOIA GELLER
>  RUDMAN & ROBBINS LLP
>58 South Service Road, Suite 200
>Melville, New York  11747
>srudman@csgrr.com
>
>*Co-Lead Counsel for Plaintiff*

>>         /s/ GEORGE T. CONWAY III
>>         George T. Conway III